IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RENAE LEONA LACAILLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 21-826-SRF |
| ) | |
| KILOLO KIJAKAZI,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant, ) | |
| ) | |

### MEMORANDUM OPINION[2]

Plaintiff Renae Leona Lacaille ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) against defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration (the "Commissioner"), seeking judicial review of the Commissioner's final decision denying Plaintiff's claim for supplemental security income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f. (D.I. 2) Currently before the court are cross-motions for summary judgment filed by Plaintiff and the Commissioner.[3] (D.I. 12; D.I. 14) For the reasons set forth below, I recommend that the court GRANT Plaintiff's motion for summary judgment (D.I. 12), DENY the Commissioner's cross-motion for summary judgment (D.I. 14), and remand the case for further proceedings.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Kijakazi is substituted as Defendant in place of Andrew Saul.
[2] On March 28, 2022, the parties consented to the jurisdiction of a magistrate judge to conduct all proceedings in this matter through final judgment, pursuant to 28 U.S.C. § 636(c). (D.I. 19)
[3] The briefing on the pending motions is found at D.I. 13 and D.I. 15. On December 8, 2021, Plaintiff filed a notice of her intention to rest on her opening brief without further briefing. (D.I. 16)

## I. BACKGROUND

### A. Procedural History

Plaintiff protectively filed a claim for SSI on January 30, 2018, alleging disability as of November 18, 2013 due to bipolar disorder, depression, anxiety, post-traumatic stress disorder, high blood pressure, asthma, arthritis in both knees and legs, back and shoulder pain, and eczema. (D.I. 9 at 85-86, 192) Plaintiff's claims were denied initially in June 2018 and upon reconsideration in April 2019. (*Id.* at 84, 105) At Plaintiff's request, an administrative law judge ("ALJ") held a hearing on June 1, 2020. (*Id.* at 43-59) The ALJ issued an unfavorable decision on June 12, 2020, finding that Plaintiff was capable of a limited range of light work. (*Id.* at 21-34) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 7-9)

Plaintiff brought this civil action on June 7, 2021. (D.I. 2) Plaintiff filed the pending motion for summary judgment on November 5, 2021 (D.I. 12), and the Commissioner cross-moved for summary judgment on December 2, 2021 (D.I. 14). Briefing is now complete on the pending motions.

### B. Medical History

Plaintiff was 33 years old when she filed her application for SSI benefits on January 30, 2018. (D.I. 9 at 33) The ALJ found that Plaintiff had the following severe impairments: cervicalgia, lower back pain, obesity, bipolar disorder, and an intellectual disability. (*Id.* at 23) The court focuses its summary of the medical evidence on the records relevant to Plaintiff's mental impairments, which are the subject of Plaintiff's appeal.

2

### 1. Medical evidence

In March 2016, Plaintiff was voluntarily admitted to Rockford Center for treatment of her mental health issues. (D.I. 9 at 353) Despite her history of mental health treatment, she had recently stopped taking her medications, causing her to experience increased feelings of anger and anxiety. (*Id.*) Plaintiff followed up with outpatient mental health treatment at Connections Community Support Programs ("Connections"). (*Id.* at 446-50)

During the relevant time period between 2018 and 2020,[4] Plaintiff treated with three providers at Connections. Nancy Cleary, PMH CNS, performed medication checks and consistently reported that Plaintiff was compliant with her medication. (D.I. 9 at 615, 690, 866) Plaintiff routinely reported feeling depressed, overwhelmed, and frustrated, but she stated that her medications helped her stay balanced. (*Id.* at 617, 622, 691, 844, 851, 866)

Plaintiff also attended therapy sessions at Connections with Rashanah Peterson, MS/HCA, OL, between 2018 and 2020. Ms. Peterson's treatment notes describe the sources of Plaintiff's stress and anxiety to include family conflict and the completion of paperwork pertaining to her Social Security case, but Plaintiff consistently demonstrated mental stability and compliance with her medications. (D.I. 9 at 625-29, 637) Social worker Jay Cantor, LCSW, also met with Plaintiff from 2019 to 2020. His records are consistent with Ms. Peterson's treatment notes, indicating that Plaintiff exhibited some mild depressive symptoms and was often

---

[4] The relevant period for Plaintiff's SSI claim begins with her January 30, 2018 application date through the date of the ALJ's decision on June 12, 2020. *See* 20 C.F.R. § 416.202(g) (claimant is eligible for SSI benefits when an application for SSI benefits is filed); 20 C.F.R. § 416.203(b) ("[Y]ou cannot become eligible for payment of SSI benefits until the month after the month in which you first become eligible for SSI benefits."); 20 C.F.R. § 416.501 ("Payment of benefits may not be made for any period that precedes the first month following the date on which an application is filed[.]"); *see also Azbell v. Saul*, 2020 WL 2392444, at *1 (E.D. Pa. Apr. 24, 2020) (explaining that "applicants are ineligible for [SSI] benefits until the month after applying for benefits.").

overwhelmed due to family conflict, but her overall mood was stable. (*Id.* at 696-97, 825, 847, 854-55, 862-63) In April 2019, Plaintiff told Mr. Cantor that she intended to start her own business. (*Id.* at 824) Throughout the summer of 2019, Plaintiff reported to Ms. Peterson that her basket-making business was doing well, she was mentally stable, and she remained compliant with her medications. (*Id.* at 826, 828)

### 2. Medical opinions

Brian Simon, Psy.D completed a psychological functional capacity evaluation during a consultative examination in June 2018 to assess Plaintiff's functional limitations for disability determination purposes. (D.I. 9 at 523-29) Dr. Simon confirmed that Plaintiff suffered from mild depressive symptoms but could not validate her diagnoses of bipolar disorder, anxiety, or post-traumatic stress disorder. (*Id.* at 528-29) On the psychological functional capacity evaluation form, Dr. Simon indicated Plaintiff had moderate limitations in her ability to relate to other people, maintain her personal habits, carry out instructions, sustain work performance, and cope with the pressures of ordinary work and mild restrictions on her activities of daily living. (*Id.* at 523-24) He further opined that Plaintiff had mild limitations in her ability to understand simple instructions, carry out activities of daily living, and perform routine tasks. (*Id.*)

In his narrative description of the consultative evaluation, however, Dr. Simon explained that Plaintiff did not have difficulty getting along with others, she had no problems maintaining concentration or understanding and following simple instructions, and she could independently perform activities of daily living such as managing her finances and completing household chores. (*Id.* at 528) Dr. Simon concluded that Plaintiff was capable of making decisions and exercising judgment, insight, and common sense in a work setting, although he anticipated she may experience some problems adapting to different circumstances and persisting for a normal

4

work period due to her mental impairments. (*Id.*)

On August 22, 2018, Ms. Peterson completed a psychological functional capacity evaluation regarding Plaintiff's bipolar disorder and generalized anxiety disorder. (D.I. 9 at 595-97) Ms. Peterson identified severe impairments in Plaintiff's ability to sustain work performance and attendance, cope with pressures of ordinary work, and perform routine, repetitive tasks. (*Id.* at 597) Ms. Peterson also explained that Plaintiff had moderate to severe impairments in her ability to relate to other people and understand and carry out simple instructions. (*Id.* at 596) For these reasons, Ms. Peterson opined that Plaintiff would be unable to perform simple, repetitive, full-time work. (*Id.* at 595)

The following week, Ms. Cleary completed the same psychological functional capacity evaluation for Plaintiff, opining that Plaintiff was unable to perform full-time work due to her racing thoughts, poor impulse control, disorganization, and irritated mood. (D.I. 9 at 600) Ms. Cleary identified moderate to severe impairments in Plaintiff's ability to relate to other people, perform activities of daily living, understand simple instructions, and perform routine, repetitive tasks. (*Id.* at 601-02) Ms. Cleary also identified severe impairments in Plaintiff's ability to carry out instructions, sustain work performance and attendance, and cope with the pressures of ordinary work. (*Id.* at 602)

Plaintiff underwent an additional psychological evaluation with Jolyn A. Pinamonti, Psy.D in January 2020 at the request of her attorney. (D.I. 9 at 796) Dr. Pinamonti administered various diagnostic tests that revealed Plaintiff's cognitive ability was in the extremely low range, as was her ability to sustain attention. (*Id.* at 800) Testing also revealed a severe level of depression and anxiety, and Plaintiff met the diagnostic criteria for chronic post-traumatic stress disorder. (*Id.* at 801) However, Plaintiff did not meet the criteria for a diagnosis of bipolar

5

disorder. (*Id.*)

Mr. Cantor completed a psychological functional capacity evaluation for Plaintiff in March 2020. (D.I. 9 at 870-72) Mr. Cantor explained that Plaintiff was not able to remain on task for at least 80% of a typical workday due to her depression, anxiety, mood swings, and difficulty concentrating. (*Id.* at 870) He estimated that Plaintiff had a moderately severe limitation in her ability to sustain work performance and cope with the pressures of ordinary work, moderate limitations in her ability to understand simple instructions and perform routine, repetitive tasks, and a mild limitation in her ability to carry out instructions. (*Id.* at 872)

The same month, Ms. Cleary completed another psychological functional capacity evaluation for Plaintiff that showed improvement as compared with the evaluation she completed in 2018. (D.I. 9 at 873-75) Ms. Cleary identified only moderate limitations in Plaintiff's ability to understand and carry out simple instructions and perform routine tasks. (*Id.* at 875) Nonetheless, Ms. Cleary maintained her opinion that Plaintiff was unable to perform full-time work due to Plaintiff's difficulty focusing and the ease with which Plaintiff became frustrated and overwhelmed. (*Id.* at 873)

### 3. State agency assessments

State agency physician Shelley Ross, Ph.D, evaluated Plaintiff's medical records and rendered a mental residual functional capacity assessment on June 13, 2018. (D.I. 9 at 99-102) Dr. Ross opined that Plaintiff had no significant limitations in her ability to understand and carry out simple instructions, but she was moderately limited in her ability to sustain an ordinary routine, maintain regular attendance, work in proximity to others, and maintain attention and concentration for extended periods. (*Id.* at 99-100)

In April 2019, State agency physician Carlene Tucker-Okine, Ph.D, affirmed the opinion of Dr. Ross based on her review of the evidence in Plaintiff's file. (D.I. 9 at 107) Dr. Tucker-Okine observed that Plaintiff responded well to her medication, which "helps her stay balanced," and her mood was fairly stable with only mild signs of depression and anxiety. (*Id.*) Dr. Tucker-Okine confirmed that Plaintiff was able to handle simple, routine tasks. (*Id.*)

### C. Hearing Before the ALJ

#### 1. Plaintiff' Testimony

During the hearing before the ALJ on June 1, 2020, Plaintiff testified that she had previous work experience as a teacher's aide in a daycare. (D.I. 9 at 53-54) In that role, she assisted the teacher with meal preparation, lesson plans, and activities for about twelve infants. (*Id.* at 54) Her position involved a lot of walking and lifting children. (*Id.*) The ALJ inquired about a note in the treatment records from Plaintiff's therapist indicating that Plaintiff's business was doing well. (*Id.* at 55) Plaintiff testified that she had made baskets as a hobby, and she made business cards pertaining to her basket-making activity, but she did not make money from these activities. (*Id.* at 52, 55)

#### 2. Vocational Expert Testimony Before the ALJ

At the administrative hearing in June 2020, the ALJ posed the following hypothetical to vocational expert ("the VE"):

> Please assume a hypothetical individual the same age, education and work experience as the claimant who can perform light [sic]. Climb ramps and stairs, ladders, ropes, and scaffolds. Frequently balance. Occasionally stoop, kneel, crouch, crawl. Occasional exposure to extreme cold, heat, wetness, humidity, vibration, sunlight, fumes, odors, dust, gas, moving dangerous machinery or unprotected heights. Can perform unskilled work with a reasoning level of 1 or 2. No piece work, no assembly line work. Occasional changes in the work setting, decision making, interaction with coworkers that requires no teamwork or tandem tasks and occasional interaction with the public. Could this person perform the claimant's past work?

(D.I. 9 at 57) In response to the ALJ's hypothetical, the VE testified that such a hypothetical individual would not be able to perform Plaintiff' past work as a daycare teacher's aide. (*Id.*) However, the VE indicated that such a hypothetical individual could work as a table worker, inserter of safety goods, or garment bagger. (*Id.* at 57-58)

The ALJ then asked the VE whether the hypothetical individual would be able to maintain employment if she lacked concentration and focus to such a degree as to be off task fifteen percent or more of the workday. (*Id.* at 58) The VE responded that such a hypothetical individual would not be able to participate in competitive employment. (*Id.*)

**D. The ALJ's Findings**

Based on the medical evidence in the record and the testimony by Plaintiff and the VE, the ALJ determined that Plaintiff was not disabled under the Act for the relevant time period from the January 30, 2018 application date through the date of the ALJ's decision. (D.I. 9 at 21-34) The ALJ found, in pertinent part:

1. The claimant has not engaged in substantial gainful activity since January 30, 2018, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: cervicalgia, lower back pain, obesity, bipolar disorder, and an intellectual disability (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except the claimant can occasionally climb ramps, stairs, ladders, ropes, and scaffolds; can frequently balance; and, can occasionally stoop, kneel, crouch, and crawl. The claimant can have occasional exposure to extreme cold, extreme heat, wetness, humidity, sunlight, vibrations, fumes, odors, dust, gases, poor ventilation, hazards such as moving machinery and

>    unprotected heights. The claimant can perform unskilled work, reasoning level one (1) or (2), involving no piece work, no assembly line work, occasional changes in work setting, occasional decision making, occasional interaction with coworkers with no teamwork or tandem tasks, and occasional interaction with the public.
>
> 5. The claimant is unable to perform any past relevant work (20 CFR 416.965).
>
> 6. The claimant . . . was 33 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).
>
> 7. The claimant has a limited education and is able to communicate in English (20 CFR 416.964).
>
> 8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).
>
> 10. The claimant has not been under a disability, as defined in the Social Security Act, since January 30, 2018, the date the application was filed (20 CFR 416.920(g)).

(D.I. 9 at 23-34)

## II. STANDARD OF REVIEW

Judicial review of the ALJ's decision is limited to determining whether substantial evidence supports the decision. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence means enough relevant evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Pearson v. Comm'r of Soc. Sec.*, 839 F. App'x 684, 687 (3d Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). When applying the substantial evidence standard, the court "looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations."

9

*Biestek*, 139 S. Ct. at 1154 (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The threshold for satisfying the substantial evidence standard is "not high[,]" requiring "more than a mere scintilla" of evidence. *Id.*

## III. DISCUSSION

### A. Disability Determination Process

Title XVI of the Social Security Act provides for the payment of disability benefits to indigent persons under the SSI program. 42 U.S.C. § 1382(a). A disability is defined for purposes of SSI as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is only disabled if the impairments are so severe that they preclude a return to previous work or engagement in any other kind of substantial gainful work existing in the national economy. *Id.* at § 423(d)(2)(A); *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003).

The Commissioner must perform a five-step analysis to determine whether a person is disabled. *See* 20 C.F.R. § 416.920; *Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999). If the Commissioner makes a finding of disability or non-disability at any point in the sequential process, the Commissioner will not review the claim further. 20 C.F.R. § 416.920(a)(4)(i). At step one, the Commissioner determines whether the claimant is engaged in any substantial gainful activity. *See id.* If the claimant is not engaged in substantial gainful activity, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a severe combination of impairments. *See id.* at § 416.920(a)(4)(ii).

If the claimant's impairments are severe, at step three, the Commissioner compares the claimant's impairments to a list of impairments that are presumed severe enough to preclude any gainful work. *See id.* at § 416.920(a)(4)(iii); *Plummer*, 186 F.3d at 428. When a claimant's impairment or its equivalent matches a listed impairment, the claimant is presumed disabled. *See* 20 C.F.R. § 416.920(a)(4)(iii). If a claimant's impairment, either singly or in combination, fails to meet or medically equal any listing, the analysis continues to steps four and five. *See id.* at § 416.920(e).

At step four, the ALJ considers whether the claimant retains the residual functional capacity ("RFC") to perform past relevant work. *See id.* at § 416.920(a)(4)(iv); *Plummer*, 186 F.3d at 428. A claimant's RFC "measures the most she can do despite her limitations." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (quoting 20 C.F.R. § 404.1545(a)(1)) (internal quotations and alterations omitted). The claimant bears the burden of demonstrating the inability to return to past relevant work. *See Plummer*, 186 F.3d at 428.

If the claimant is unable to return to past relevant work, at step five, the Commissioner must demonstrate that the claimant's impairments do not preclude an adjustment to any other available work. *See* 20 C.F.R. § 416.920(g); *Plummer*, 186 F.3d at 428. In other words, the Commissioner must prove that "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. *See id.* The ALJ often seeks the VE's assistance in making this finding. *See id.*

### B. Whether the ALJ's Decision is Supported by Substantial Evidence

Plaintiff argues that the ALJ failed to properly assess the consistency and supportability of the medical opinion evidence regarding her mental impairments. (D.I. 13 at 8-18) According to Plaintiff, the ALJ's inadequate evaluation of these medical opinions led to a deficient RFC assessment, and remand is therefore required. (*Id.*) For the following reasons, the court concludes that the ALJ's assessments of the opinions of Plaintiff's treating providers, consultative examiner Dr. Simon, and the State agency physicians were supported by substantial evidence.

#### 1. Assessment of opinion evidence from treating providers

Plaintiff contends that the ALJ erred in finding the opinions proffered by Ms. Peterson, Ms. Cleary, and Mr. Cantor unpersuasive because these opinions were consistent with each other and were supported by the providers' underlying treatment records. (D.I. 13 at 9-11, 15-16) Because the opinions of Plaintiff's treating providers support greater limitations than those included in the ALJ's RFC, Plaintiff contends that the error is not harmless, and remand is required. (*Id.* at 8-9, 17)

In accordance with the revised regulatory framework for claims filed on or after March 27, 2017, the ALJ is not required to give any "specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including from a medical source." 20 C.F.R. § 416.920c(a). Instead, the ALJ must consider the persuasiveness of all medical opinions based on the application of five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. *Id.* at § 416.920c(a)-(c). The ALJ must explain how he considered the most important factors of supportability and consistency. *Id.* at § 416.920c(b)(2). "Consistency concerns the degree to which the opinion reflects the same

12

limitations described in evidence from other sources, whereas supportability concerns the relevancy of objective medical evidence and degree of explanation given by the medical source to support the limitations assessed in the opinion." *Eader v. Saul*, 2020 WL 10898140, at *3 (M.D. Pa. Nov. 20, 2020) (internal quotation marks and citations omitted).

Here, the ALJ acknowledged that Ms. Cleary, Ms. Peterson, and Mr. Cantor, "issued opinions overall consistent with one another," but he found that those opinions were not supported by their own treatment notes. (D.I. 9 at 30) In support of this finding, the ALJ observed that "[t]he claimant has consistently reported her medication regimen has controlled her symptoms, and she has displayed no issues or difficulties attending appointments as scheduled or taking her medications as prescribed." (*Id.*)

While the underlying records confirm that Plaintiff was receptive to treatment and benefited from her medications, the ALJ did not acknowledge treatment records from Ms. Cleary identifying lapses in Plaintiff's medication regimen. In March 2019, Ms. Cleary diagnosed Plaintiff with "Nonadherence to Medical Treatment," explaining that Plaintiff reported taking her medications consistently despite the fact that she "should have run out of meds" by that time. (D.I. 9 at 710) Again in August 2019, Ms. Cleary noted that Plaintiff ran out of medication and "has been stretching meds." (*Id.* at 843-44) Ms. Cleary's notes indicate that when Plaintiff ran out of medication, she felt "discombobulated." (*Id.* at 615) In this regard, the ALJ's assessment that the treatment records showed "no issues or difficulties . . . taking her medications as prescribed" is inaccurate. (*Id.* at 30)

More critically, the ALJ concluded that the opinions of Ms. Cleary, Ms. Peterson, and Mr. Cantor were unpersuasive based on his finding that their treatment notes showed Plaintiff "has not displayed limited attention, concentration, or ability to complete tasks presented to her."

13

(D.I. 9 at 30) This assessment is not supported by Plaintiff's treatment records. Ms. Cleary routinely reported that Plaintiff exhibited rambling speech and racing thoughts, and she often felt overwhelmed and frustrated. (*Id.* at 617, 622, 691, 844, 851, 866) These aspects of Ms. Cleary's treatment records support her opinion that Plaintiff's racing thoughts, and the ease with which she became frustrated and overwhelmed, would prevent Plaintiff from working full-time. (*Id.* at 600-02, 873-75)

Ms. Peterson's treatment notes from 2018 establish that Plaintiff often required Ms. Peterson's assistance in completing and transmitting paperwork. (D.I. 9 at 625, 629) At least twice, Plaintiff dropped in without a scheduled appointment to seek Ms. Peterson's help in completing paperwork. (*Id.* at 631, 633) On these occasions, Ms. Peterson observed Plaintiff's agitation, heightened anxiety, and frustration. (*Id.*) These records support Ms. Peterson's opinion that Plaintiff would be limited in her ability to sustain work performance, cope with the pressures of ordinary work, understand and carry out simple instructions, and perform routine, repetitive tasks. (*Id.* at 596-97)

In April 2019, Mr. Cantor described Plaintiff's mood as "labile," and his treatment notes from December 2019 indicated that Plaintiff "is active in many areas of her life; but needs help focusing on her many daily tasks." (*Id.* at 825, 854) In January 2020, he reported that Plaintiff exhibited "hyper verbal, rambling speech, struggling to stay focused." (*Id.* at 863) These portions of Mr. Cantor's records support his opinion that Plaintiff would have difficulty remaining on task throughout the workday due to her mood swings and difficulty concentrating. (*Id.* at 870)

Because the ALJ's characterization of Plaintiff's treatment records is factually inaccurate, the ALJ's justification for finding the opinions of Ms. Cleary, Ms. Peterson, and Mr. Cantor

14

unpersuasive under the supportability factor is flawed. *See Andrews v. Kijakazi*, 2022 WL 617118, at *8 (M.D. Pa. Mar. 2, 2022) (concluding that ALJ's decision was not supported by substantial evidence where his reasons for finding medical opinion persuasive were factually inaccurate). For this reason, the ALJ's decision is not supported by substantial evidence, and remand is required for reconsideration of the supportability factor as it pertains to the opinions of Ms. Cleary, Ms. Peterson, and Mr. Cantor. *See Gamret v. Colvin*, 994 F. Supp. 2d 695, 698 (W.D. Pa. 2014) ("Even if enough evidence exists in the record to support the decision, [the court] cannot uphold it if the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." (internal citations and quotation marks omitted)).

### 2. Assessment of evidence from consultative examiner

Plaintiff correctly contends that the ALJ erred by failing to address Dr. Simon's opinion that Plaintiff "may encounter some problems . . . being able to persist for a normal work period because of her psychiatric problems." (D.I. 9 at 528; D.I. 13 at 12-13) The ALJ acknowledged Dr. Simon's opinion that Plaintiff had "moderate limitations . . . sustaining work performance" and found Dr. Simon's opinions persuasive. (D.I. 9 at 29) Nonetheless, the ALJ did not account for any limitations on Plaintiff's ability to complete a normal work period in his RFC assessment. (*Id.* at 27) The ALJ's failure to account for the limitation in his RFC assessment or elsewhere in his opinion prevents the court from ascertaining whether the ALJ did not credit this portion of the opinion or simply ignored it. *See Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000).

Plaintiff's second argument regarding Dr. Simon's alleged failure to review Plaintiff's medical records is not supported by the record. (D.I. 13 at 13) Dr. Simon's opinion expressly

15

acknowledges that he received Plaintiff's medical records along with her referral note. (D.I. 9 at 526) Because the ALJ will be required to reassess the opinions of Dr. Simon and Plaintiff's treating providers on remand, the court need not reach Plaintiff's argument regarding the level of persuasion accorded to each of the opinions. (D.I. 13 at 13) Similarly, Plaintiff's third argument regarding the alleged stability of Plaintiff's mental health symptoms during the relevant period may be impacted by the ALJ's reconsideration of portions of the record on remand in accordance with the court's rulings at §§ III.B.1 and 2.

### 3. Assessment of State agency administrative findings

Plaintiff argues that the ALJ erred in crediting the reports of two non-examining State agency psychologists over the opinions of her treating providers. (D.I. 13 at 14-15) In particular, Plaintiff challenges the ALJ's representation that the State agency psychological consultants possess "a comprehensive understanding of agency rules and regulations." (*Id.*; D.I. 9 at 32) But this was not the only—or even the primary—factor considered by the ALJ in determining that the opinions of the State agency consultants were persuasive. The ALJ also focused on the State agency consultants' thorough review of the available medical record, the opinions' internal consistency, and the fact that the opinions were "well supported by a reasonable explanation and the available evidence at the time of their determinations, including . . . the rather stable, benign findings on mental status examinations on a stable medication regimen throughout the relevant period." (D.I. 9 at 32) Thus, the ALJ did not err by also noting that the State agency consultants possess "a comprehensive understanding of agency rules and regulations." (*Id.*)

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment (D.I. 12) is GRANTED, and the Commissioner's cross-motion for summary judgment (D.I. 14) is DENIED. This matter shall be remanded for further proceedings. On remand, the ALJ shall reevaluate the supportability factor as it pertains to the opinions of Ms. Cleary, Ms. Peterson, and Mr. Cantor, and shall address Dr. Simon's opinion that Plaintiff had moderate limitations in sustaining work performance. An Order consistent with this Memorandum Opinion shall issue.

Dated: September 30, 2022

Sherry R. Fallon
United States Magistrate Judge